IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:21-CR-25 |
| ) | Hon. T.S. Ellis, III |
| ABDULWAHAB HUMAYUN ) | Sentencing:  May 28, 2021 |
| ) | |
| Defendant. ) | |

**DEFENDANT'S POSITION ON SENTENCING**

Abdulwahab Humayun, 23 years old, comes before the Court for sentencing for making false statements in violation of 18 U.S.C. § 1001(a)(1). Specifically, during an entry-level job interview with the FBI, he lied to federal agents about the existence of a Twitter account and, over his better judgment, attempted to cover up that lie. As his personal history reveals, however, his conduct was out of character and committed in a moment of panic. Prior to this offense, Mr. Humayun, a recent college graduate from George Mason University, was a hardworking student who had never before been in trouble, legally or otherwise. Now, he fully appreciates the seriousness of his conduct and, as evident from his letter to the Court and statements in the Presentence Report ("PSR"), he regrets it profusely. *See* Letter of Abdulwahab Humayun, attached as Exhibit A; PSR ¶ 47. He also comes from a loving, stable, and supportive family which has pledged to support him through this process.

The defense has reviewed the PSR and agrees that the sentencing guidelines are properly calculated at a total offense level of 4 and criminal history category I (0 points), with an advisory guideline range of 0 to 6 months. It is respectfully recommended that a sentence of probation is the appropriate sentence in this case. In particular, weighing Mr. Humayun's personal history, the circumstances of this offense, and the significant consequences that a felony conviction carries for

Mr. Humayun's life and professional future, the defense submits that a guidelines sentence of one year of probation, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, would be sufficient but not more than necessary to achieve the aims of sentencing here.

I.  **Background**

On December 14, 2020, a criminal complaint was filed charging Mr. Humayun with falsifying, concealing, and covering up a material fact by means of a trick, scheme and device, in violation of 18 U.S.C § 1001(a)(1). He was arrested the next day and was fully cooperative with federal agents about his conduct. At his initial appearance, the government did not seek his detention, and he was released on his personal recognizance with pretrial supervision that same day. Mr. Humayun waived his right to a preliminary hearing on December 18, 2020, and subsequently his right to a grand jury indictment. On March 12, 2021, Mr. Humayun pleaded guilty to a one-count criminal information for the same charge. This Court continued the proceedings to May 28, 2021 for sentencing.

Since his initial appearance, Mr. Humayun has been fully compliant with all of the terms of his pretrial release. The Court continued him on bond following his guilty plea, and Mr. Humayun has continued to comply with his release conditions without a single infraction. PSR ¶ 9.

II.  **Legal Standard**

Courts must impose individualized sentences that are "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, adequately deter criminal conduct, and protect the public. 18 U.S.C. § 3553(a)(2). In determining what sentence is appropriate for a particular defendant, courts must consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory

range provided by the U.S. Sentencing Guidelines. *Id.* §§ 3553(a)(1), (a)(4).[1]  Ultimately, the Court's punishment must "suit not merely the offense but the individual defendant." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (citation omitted).

### III.  In Consideration of All of the § 3553(a) Factors, A Sentence of Probation is Sufficient But Not More Than Necessary Under the Circumstances of This Case.

#### a.  Mr. Humayun's personal history and characteristics

Mr. Humayun was born in Alexandria, Virginia to immigrant parents.  In the 1980s, his parents left Pakistan for the United States in search of better economic and educational opportunities. The family settled in a quiet, middle-class neighborhood in Woodbridge, Virginia, where Mr. Humayun has lived most of his life.  In many ways, he had a typical suburban upbringing.  He describes a childhood in which all of his needs were met.  His father worked as a sales associate, while his mother stayed at home and cared for their two children.  Mr. Humayun enjoyed a close relationship with both of his parents, who were loving and supportive throughout his childhood.

Although Mr. Humayun had a stable home environment, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[1]  The full list of factors for the district court to consider is: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the advisory Guidelines range; (5) any pertinent policy statements by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. §§ 3553(a)(1)-(7).

██████████████████████████████████████████████████████████████████████████████████ Early on, Mr. Humayun learned that he was particularly adept at using computers, and he quickly gravitated towards them. Starting in middle school, the internet offered a social outlet, where he was able to develop connections with others ████████████████████████████. Mr. Humayun found comfort and self-worth online.

████████████████████████████████████ Mr. Humayun excelled academically throughout school. His parents note that they never had to push him in school; he was always intrinsically motivated to work hard and stay focused. He never experimented with drugs or alcohol. PSR ¶ 75. And his dedication to school over the years paid off - he graduated magna cum laude from Woodbridge High School, winning academic awards along the way. PSR ¶ 76. In May 2020, he graduated with a computer science degree from George Mason University, where he continued to do well academically. PSR ¶ 77.

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. As noted in the PSR, in April 2021, Mr. Humayun was hired to work as a web developer intern for Brain Evolved, a software company in Herndon, Virginia. The company provides software to retirement communities that helps slow down the effects of dementia, a mission that drew Mr. Humayun to the company. Mr. Humayun is excited about the position, his first paying job, ████████████████████████████ ████████████████████████████████████████████████

4

Notwithstanding his poor decision in this case, Mr. Humayun's family continues to be steadfast in their support of him. As his parents' letters reveal, throughout his life, Mr. Humayun has shown to be a kind, generous and hardworking young man. *See generally* Letters of Humayun Javaid and Mahjabeen Abdullah, attached as Exhibit B. Mr. Humayun is most disappointed in his actions because he feels he let his parents down.

### b. Nature and circumstances of the offense

Many young people spend time on the internet. But, as a reserved teenager, Mr. Humayun acknowledges that he spent countless hours online in his free time over the years. Mainly, he spent that time playing video games with online friends. But in 2018, he started posting a range of provocative memes on his @AmericanEmirate Twitter account, after seeing similar ones online. He quickly saw that they attracted much attention—"likes" and "retweets" from others on social media. Eager to be accepted by and connect with others, he acknowledges that his conduct was driven by a desire to seek that attention. Mr. Humayun never seriously believed any of the rhetoric he posted online and, importantly, there is no allegation that he has posed any threat to the community. However, he now realizes that such content was wholly inappropriate to post and inconsistent with his values and upbringing. As he explained in his letter to the Court, in the future, Mr. Humayun is committed to ensuring that his online presence reflects his true character and that he uses the internet positively, such as to further his education, learn new skills, and to help others. Ex. A.

When Mr. Humayun graduated from college in May 2020, working for the federal government was a professional dream of his. Ex. A. During and after college, he applied for computer science positions at various federal agencies, including the FBI. In September 2020, he was excited to learn that he had progressed in the FBI's interview process and would get an in-

person interview. As part of the application, he agreed to a comprehensive background check and acknowledged that making a false statement could subject him to criminal penalties. At the time, his online activity was not at the forefront of his mind, but when asked about his Twitter account, Mr. Humayun panicked. He first told FBI special agents he could not remember his account name and then provided the name for an older account. Worried that the discovery of his @AmericanEmirate account would ruin his chances of getting the job, he later changed the privacy settings on the account and created a new Twitter account with the vanity name he provided during the interview.

Mr. Humayun is a well-meaning young man who had an uncharacteristic lapse in judgment in this case. He has admitted to his offense conduct and accepted responsibility early on. 

As reflected in his letter to the Court, Mr. Humayun is profoundly ashamed of his thoughtless and ill-conceived choices, "which will live with [him] for the rest of [his] life." Ex. A. He blames no one but himself for his actions and is prepared to accept the consequences of his conduct.

      **c. A probationary sentence, in addition to the significant collateral consequences he will experience, will reflect the basic aims of sentencing.**

For Mr. Humayun, who had an unblemished record before this case, this entire experience has been devastating, to the say the least. The impact of a felony conviction, marking the first and only time he has been in trouble with the law, alone will serve as ample punishment for his non-violent offense. A felony conviction is a profound mark of shame for Mr. Humayun. It will present substantial barriers for his professional goals and limit his chances for upward mobility. He will likely never be able to work for the federal government, something he had aspired to do for years. Such a conviction has already created a substantial deterrent effect on Mr. Humayun, as he has worked hard to show the Court that he is accountable for his actions through his exemplary pretrial record for nearly six months. In short, given Mr. Humayun's lack of criminal history and the collateral consequences of this conviction, it is simply not necessary to impose a period of incarceration in order to deter Mr. Humayun.

With regard to other would-be offenders, the deterrent impact of this prosecution alone (notwithstanding the sentence imposed) is enough to deter others. It is often presumed that incarceration is necessary to achieve deterrence, and that the more incarceration imposed, the greater the deterrent effect. To the contrary, research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." *See* Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*; *see also* Zvi D. Gabbay, Exploring The Limits of The Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity").

Mr. Humayun's youth, brain development and lack of real-world experience further militate in favor of a probationary sentence. Social science tells us that young people like Mr. Humayun are unfinished products—cognitively, emotionally, behaviorally, and in their decision-making abilities. Well-accepted studies of the brain conclude that its development may not be complete until the age of twenty-five. *See, e.g.,* Elizabeth Williamson, Brain Immaturity Could Explain Teen Crash Rate, Washington Post, February 1, 2005 (summarizing National Institute of Health study that suggests "that the region of brain that inhibits risky behavior is not fully formed until age 25"). Of course, Mr. Humayun's age is not an excuse for his behavior. But it does serve to provide a larger context for it and explains how a young man of Mr. Humayun's intelligence and background made such a poor decision here.

In sum, a sentence of probation, at the low end of the guidelines, appropriately balances the goals of sentencing in this case. It is a punishment accompanied by significant collateral consequences for Mr. Humayun. It also weighs heavily his personal history, the aberrational nature of his conduct, and his very hopeful prospects for the future, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. A sentence of probation will also allow him to keep his new internship, a source of pride and motivation for Mr. Humayun going forward.

## IV.   Conclusion

Accordingly, for these reasons and any others that appear to the Court, a sentence of probation is sufficient but not greater than necessary to achieve the aims of sentencing in this case. In addition, in light of his indigent status, Mr. Humayun respectfully asks the Court to find that he lacks the present ability to pay a fine.

Respectfully submitted,<br>
ABDULWAHAB HUMAYUN<br>
By counsel,

/s/
Lula Hagos
Va. Bar No. 95549
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0819 (tel)
703-600-0880 (fax)
Lula_Hagos@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2021, I will file the foregoing using the CM/ECF system, which will serve copies on all counsel of record.

                                      /s/
Lula Hagos
Va. Bar No. 95549
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0800
703-600-0880 (fax)
Lula_Hagos@fd.org